# IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

Nationwide Mutual Insurance Company          :
One Nationwide Plaza                         :
Columbus, Ohio 43215                         :
                                             :
    PLAINTIFF,                                :      Judge  09CVH 09 14070
                                             :
    v.                                       :      Case No.
                                             :
Bridgestreet Corporate Housing, LLC          :
dba Bridgestreet Worldwide                   :
c/o Statutory Agent                          :
CT Corporation                               :
1300 East 9th Street                         :
Cleveland, Ohio  44114                       :
                                             :
Bridgestreet Midwest, LLC                    :
dba Bridgestreet Worldwide                   :
c/o Statutory Agent                          :
CT Corporation                               :
1300 East 9th Street                         :
Cleveland, Ohio  44114                       :
                                             :
and                                          :
                                             :
Bridgestreet Ohio, LLC                       :
dba Bridgestreet Worldwide                   :
c/o Statutory Agent                          :
CT Corporation                               :
36 East 7th Street                           :
Cincinnati, Ohio  45202                      :

    DEFENDANTS.

## COMPLAINT

Plaintiff Nationwide Mutual Insurance Company ("Nationwide" or "Plaintiff"),

for its Complaint against Bridgestreet Corporate Housing, LLC, Bridgestreet Midwest,

LLC, and Bridgestreet Ohio, LLC (collectively "Bridgestreet" or "Defendants"), hereby states and alleges as follows:

## I.   THE PARTIES

1.   Plaintiff Nationwide, at all times relevant hereto, is an Ohio corporation licensed to conduct business in Ohio with a principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

2.   Defendants, at all relevant times hereto, are Delaware limited liability corporations licensed to conduct business in Ohio.

## II.   JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over Defendants pursuant to Ohio Rev. Code section 2305.01.

4.   This Court has general personal jurisdiction over Defendants as Defendants have continuous and systematic contacts with Ohio through their maintenance of a sales office in Columbus, Ohio, which houses their Director of U.S. Sales.

5.   Venue is proper over the Defendants pursuant to Ohio Civil Rule 3(B)(3), as Bridgestreet's acts and omissions giving rise to the claim for relief occurred in Franklin County, Ohio.

## III.   FACTS COMMON TO ALL CLAIMS

### A.   Past Transactions

6.   Nationwide is a provider of a variety of insurance products, including products protecting against property damage resulting from natural disasters, including hurricanes.

7.      As a part of Nationwide's service to its customers, it dispatches a disaster response team to affected areas following a hurricane or other natural disaster to assist with clean-up, rebuilding, and to provide any necessary services to Nationwide customers affected by the disaster.

8.      This disaster response team is referred to as the Nationwide Catastrophe Team, or "NATCAT."

9.      Bridgestreet provides reservations for extended stay apartments and condominiums to corporate clients.

10.     On or around December 2004, NATCAT began using Bridgestreet's services to lease furnished apartments and condominiums to house NATCAT team members dispatched to areas affected by natural disasters.

11.     Nationwide employed Bridgestreet's extended stay accommodation services for NATCAT on multiple occasions prior to this dispute, including reservations for the following locations: (1) twenty-seven (27) units in West Palm Beach, Florida from December 26, 2004 to April 5, 2005; (2) twenty (20) units in Port St. Lucie, Florida from February 15, 2005 to September 1, 2006; (3) eighteen (18) units in Fort Meyers, Florida from February 9, 2005 to December 13, 2006; and (4) two (2) units in Gulfport, Mississippi from September 15, 2006 to March 1, 2007.

12.     Mindy Pauley is the Bridgestreet sales representative who facilitated all of the transactions relevant to this Complaint.

13.     Mindy Pauley is a Director of U.S. Sales for Bridgestreet, and maintains her sales office in Columbus, Ohio.

3

14.     All communications between Bridgestreet and Nationwide relating to the accommodations described in paragraph eleven (11) of this Complaint were conducted through Helms Briscoe, a third party reservation vendor contracted by Nationwide to secure NATCAT's hotel, apartment, and condominium needs.

15.     In each transaction described above, once a long term housing need was identified by NATCAT, it contacted Helms Briscoe to make the necessary reservations on its behalf.

16.     In each transaction, Helms Briscoe then contacted Bridgestreet to inquire as to pricing and the availability of housing inventory in the locations requested by Nationwide.

17.     In each transaction, Bridgestreet then responded to Helms Briscoe with the relevant pricing and lease term options available for housing in the requested location.

18.     Helms Briscoe then provided this information to Nationwide so that it could make a final decision as to whether the pricing, location, and lease term were acceptable.

19.     In each transaction, once Helms Briscoe received approval from Nationwide, it requested that Bridgestreet send a written contract summarizing the proposed reservation, and any necessary leases required for confirmation.

20.     In each transaction, Bridgestreet then sent its standard contract and any necessary leases to Helms Briscoe to be signed by a Nationwide representative responsible for NATCAT.

21.     In each transaction, Helms Briscoe was the sole contact with Bridgestreet.

22.     Bridgestreet had no contact with Nationwide in any transaction.

4

23.     Bridgestreet's standard contract, entitled "Reservation Confirmation," contained the name and address of the property to be reserved, relevant arrival and departure dates, key delivery information, the number of units to be reserved, the number of guests expected, and relevant pricing information.   A true and accurate copy of a sample Reservation Confirmation is attached hereto as Exhibit 1.

24.     Additionally, the standard contract contained relevant direct billing information, including a space to be signed by Nationwide specifically authorizing Bridgestreet to use Nationwide's corporate credit card to confirm the units specifically described on the lease.

25.     Bridgestreet's standard contract states in relevant part:

> I authorize Bridgestreet Corporate Housing Worldwide, Inc. ("Bridgestreet") to use this card for charges incurred by me or by any other occupant or invitee for any unpaid rent, phone, or incidental charges, missing or damaged items or damage to the unit. I agree to use of this card without my signature for such charges . . .

26.     Bridgestreet's authority to use Nationwide's corporate credit card was limited to those transactions in which Nationwide executed Bridgestreet's standard contract, as set forth in paragraph 25, above.

27.     Once the contract and any necessary leases were signed, Helms Briscoe forwarded copies of these documents to Bridgestreet.

28.     Once Bridgestreet had possession of the signed contract authorizing use of Nationwide's corporate credit card, and any necessary leases, it confirmed the reservation with the appropriate apartment or condominium company using Nationwide's corporate credit card.

29.      Once confirmed, Bridgestreet sent Helms Briscoe a list of addresses, unit numbers, phone numbers and gate codes so that Helms Briscoe could assign individual NATCAT team members to each unit.

30.      In each transaction, once all team members were assigned to a reserved apartment or condominium unit, Helms Briscoe sent the final list of team member names and unit assignments to Bridgestreet so that the NATCAT team could check-in to the unit easily upon arrival.

**B.      Houston Condominiums**

31.      In accordance with the established course of conduct described above, Nationwide requested that Helms Briscoe locate several hundred apartments and condominiums throughout Texas for NATCAT team members in preparation for the arrival of the predicted Hurricane Rita.

32.      On September 22, 2005, Helms Briscoe requested that Bridgestreet locate fifty (50) to one hundred (100) condominiums in Houston, Texas for NATCAT in preparation for the arrival of the predicted Hurricane Rita beginning on September 25, 2005.

33.      In accordance with past transactions, Bridgestreet responded on the same day with a quote for fifteen (15) to twenty (20) units available in Houston at $111 per night for a one bedroom, and $129 per night for a two bedroom condominium. This quote is memorialized on page 2 of Exhibit 1, attached.

34.      Helms Briscoe immediately forwarded the quoted reservation information to Nationwide for its approval, noting that the terms of the lease would require that Nationwide commit to a six month lease on the condominiums.

6

35.     Later that day, Helms Briscoe responded to Bridgestreet with several follow-up questions regarding the proposed reservation, including questions regarding the number of rooms that would be located at each proposed location, and whether the quoted rate included cleaning, utilities, and high speed internet.

36.     In that same communication, Helms Briscoe also requested that Bridgestreet send the relevant contracts to be signed by Nationwide to secure the reservations.

37.     On September 23, 2005, Bridgestreet responded to several of the questions Helms Briscoe posed via email the day before.

38.     At no point during this exchange did Bridgestreet send to Helms Briscoe or to Nationwide any contracts authorizing the use of Nationwide's corporate credit card to make any reservations in Houston, nor did any Nationwide representative ever sign any such contracts.

39.     On September 23, 2005, Helms Briscoe contacted Bridgestreet, informing it that Nationwide thought the prices quoted for the Houston condominiums were too high, and asked whether lower priced rooms were available in the Houston area.

40.     Bridgestreet responded with a second quote for one bedroom apartments outside Houston for $99 per night, if Nationwide were to agree to a nine month lease.

41.     On September 26, 2005, when it became apparent that Hurricane Rita would make landfall in Houston with less than anticipated intensity, Helms Briscoe notified Bridgestreet's sales representative, Mindy Pauley, that Nationwide would not need any condominiums in Houston.

42.     In response, later that same day, Mindy Pauley responded on behalf of Bridgestreet, stating that she needed to confirm that she had not already secured the reservations on Nationwide's behalf.

43.     Helms Briscoe responded that it had never received a contract for the condominiums, and reaffirmed that Nationwide did not want the condominiums.

44.     After this final email, Bridgestreet ceased all communications with Helms Briscoe regarding the condominiums in Houston.

45.     True and accurate copies of the correspondence memorializing these discussions are attached hereto as Exhibit 2.

46.     No contracts or leases regarding any Houston condominium reservations were ever sent to Nationwide or to Helms Briscoe.

47.     At no point did Bridgestreet communicate to Helms Briscoe or to Nationwide any specific follow-up reservation information that would have allowed to Nationwide use the reserved units for the housing of employees in one of its other departments.

48.     At no point did Bridgestreet provide to Helms Briscoe or Nationwide information regarding:

        (a)   The final number of units,

        (b)   Final pricing, addresses of the units reserved,

        (c)   Phone numbers and/or

        (d)   Gate codes of any reserved units.

49.     Bridgestreet did not inform Helms Briscoe that it had used Nationwide's corporate credit card to lease the condominiums in Houston on Nationwide's behalf.

50.    Nationwide used over one-thousand hotel rooms in Houston between September and December 2005 to house employees in other Nationwide departments on other Nationwide matters.

51.    Because Bridgestreet never told Nationwide that it had leased the Houston condominiums, it was unable to mitigate its damages by using these condominiums to house its employees.

52.    The first indication that Bridgestreet had used Nationwide's corporate credit card occurred more than four months after the original charges were made, when Nationwide received a bill showing that Nationwide's corporate credit card had been charged $204,111.00 for condominiums in Houston reserved from September 28, 2005 through December 31, 2005.

53.    The invoice provided by Bridgestreet as an explanation of these credit card charges showed that Bridgestreet had leased nineteen (19) units in Houston on Nationwide's behalf at daily rates of $117 and $135 per night.

54.    A true and accurate copy of the invoice is attached hereto as Exhibit 3.

55.    The rates cited on Bridgestreet's invoice were higher than the $111 and $129 per night that were quoted to Helms Briscoe during the September 22-26, 2005, discussions.

## COUNT I: BREACH OF CONTRACT

56.    Plaintiff alleges as if fully rewritten herein each and every allegation as set forth in paragraphs 1 through 55 of this Complaint.

57.    Pursuant to the contract established through the course of dealing described above, Bridgestreet was required to obtain Nationwide's written authorization

through a signed contract in order to use Nationwide's corporate credit card to lease apartments or condominiums on Nationwide's behalf.

58.    Further, pursuant to the parties' contract, Bridgestreet was required to inform Nationwide regarding the details of any confirmed reservation so that Nationwide employees could make use of any and all reserved units.

59.    By unilaterally utilizing Nationwide's corporate credit card without Nationwide's authorization, Bridgestreet breached the parties' contract.

60.    By failing to contemporaneously notify Nationwide that it had used its credit card to reserve rooms in Houston, and by failing to provide Nationwide with any details regarding the reservations, Bridgestreet further breached the parties' contract and prevented Nationwide from mitigating any damages it incurred.

61.    By leasing condominiums at prices greater than those quoted to Helms Briscoe, Bridgestreet further breached its contract with Nationwide.

62.    As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered damages.  After a reasonable opportunity for further investigation and discovery, Plaintiff is likely to have evidentiary support to prove that it has suffered damages in an amount not less than $204,111.00, not including costs and interest.

## COUNT II: CONVERSION

63.    Plaintiff alleges as if fully rewritten herein each and every allegation as set forth in paragraphs 1 through 62 of this Complaint.

64.    Through its unauthorized use of Nationwide's corporate credit card, Bridgestreet wrongfully exercised dominion over specific funds belonging to Nationwide

to which Nationwide held legal title, and diverted these specific funds to unrelated third party condominium companies.

65.     Nationwide demanded the return of such funds, which was refused by Bridgestreet.

66.     Bridgestreet continues to refuse to deliver the funds to Nationwide despite Nationwide's requests.

67.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount in excess of $204,111.00, the precise amount to be determined at trial.

## COUNT III: BREACH OF FIDUCIARY DUTY

68.     Plaintiff alleges as if fully rewritten herein each and every allegation as set forth in paragraphs 1 through 67 of this Complaint.

69.     Bridgestreet was given authority to act as Nationwide's agent for the purpose of reserving condominiums for Nationwide's employees.

70.     As a part of this agency relationship, Nationwide entrusted Bridgestreet with its corporate credit card to use only as authorized to reserve accommodations requested by Nationwide.

71.     Bridgestreet knew that its relationship with Nationwide was one of trust and confidence.

72.     As a result of this relationship of trust and confidence, a fiduciary relationship arose between Nationwide and Bridgestreet.

73.     Based on this relationship, Bridgestreet owed a fiduciary duty to Nationwide to utilize the corporate credit card to confirm reservations only as specifically authorized by Nationwide.

74.     When Bridgestreet confirmed a reservation for several condominiums in Houston without Nationwide's express authorization, Bridgestreet breached this fiduciary duty.

75.     As a consequence of Defendants' tortious conduct, Plaintiff has suffered substantial monetary damages.  After a reasonable opportunity for further investigation and discovery, Plaintiff is likely to have evidentiary support to prove that it has suffered damages in an amount not less than $204,111.00, not including costs and interest.

## COUNT IV: NEGLIGENCE

76.     Plaintiff alleges as if fully rewritten herein each and every allegation as set forth in paragraphs 1 through 75 of this Complaint.

77.     In entrusting Bridgestreet with its corporate credit card to use as authorized to reserve requested accommodations, Bridgestreet assumed a duty of care to use the credit card only with express authorization from Nationwide.

78.     When Bridgestreet confirmed a reservation for several condominiums in Houston without Nationwide's express authorization, Bridgestreet breached this duty of care owed to Nationwide.

79.     As a consequence of the Defendants' negligent conduct, Plaintiff has suffered substantial monetary damages.  After a reasonable opportunity for further investigation and discovery, Plaintiff is likely to have evidentiary support to prove that it

has suffered damages in an amount not less than $204,111.00, not including costs and interest.

## PRAYER FOR RELIEF

80.     **WHEREFORE**, Nationwide prays that judgment be granted in its favor against Defendants, as follows:

(a) As to Count I of the Complaint, $204,111.00, plus interest, costs, attorneys' fees, and all other relief to which this Court deems Plaintiff is entitled either at law or in equity.

(b) As to Count II of the Complaint, $204,111.00, plus interest, costs, attorneys' fees, punitive damages, and all other relief to which this Court deems Plaintiff is entitled either at law or in equity.

(c) As to Count III of the Complaint, $204,111.00, plus interest, costs, attorneys' fees, punitive damages, an equitable accounting, imposition of a constructive trust, and all other relief to which this Court deems Plaintiff is entitled either at law or in equity.

(d) As to Count IV of the Complaint, $204,111.00, plus interest, costs, attorneys' fees, punitive damages, and all other relief to which this Court deems Plaintiff is entitled either at law or in equity.

(e) All other relief, both legal and equitable, as the Court deems just and proper.

*Bridget Purdue Riddell*

Drew H. Campbell (0047197)
Bridget Purdue Riddell  (0082502)
BRICKER & ECKLER, LLP
100 South Third Street
Columbus, Ohio 43215
Telephone:      (614) 227-2300
Facsimile:      (614) 227-2390
dcampbell@bricker.com
bpurdue@bricker.com

*Attorneys for Plaintiff*
*Nationwide Mutual Insurance Company*

14

**BRIDGESTREET**
CORPORATE HOUSING WORLDWIDE

**Reservation Confirmation**

4501 N. Fairfax Drive Arlington, VA 22203     Telephone: 800-278-7338   Fax: 703 387-3801

| | |
|---|---|
| Date: June 6, 2006 | BSCH Accommodation Coordinator: Derrick Jackson |
| Reservation Confirmation Number: 59586 | Client Name: Nationwide Insurance |
| Contact Name: Ken Enscoe | Guest Name: |
| Arrival Date (after 4 p.m.): June 12, 2006 | Departure Date (before 11 a.m.): December 13, 2006 |
| Property: Lakes at College Pointe | Apartment Telephone #: TBD |
| Apt Address: 8753 South Pointe Blvd | # of Bedrooms: Two     # of Guests: Two |
| Apt. TBD | Key Delivery Method: Lockbox |
| City, State, Zip: Fort Myers, FL 33919 | Accommodation Rate: $ 122.83     per Night + applicable tax |

*Apartment address is subject to change prior to move in.*   ☐ Departure Date Confirmed
☒ Notice To Vacate: 30 nights required

Pet: ☐ Dog ☐ Cat ☐ Other  Breed: ____ Weight: ____     Pet: ☐ Dog ☐ Cat ☐ Other  Breed: ____ Weight: ____

Remarks:

**Billing Information:**

| Accommodation Rate and Applicable Taxes | Parking Rental | Long Distance Telephone | Pet Sanitation Fee | Additional Amenities (i.e. additional housekeeping, rollaway) | Incidentals (i.e. missing or damaged items, unpaid balances) |
|---|---|---|---|---|---|
| | ☒ Not Applicable | | ☒ Not Applicable | ☐ Not Applicable | |
| ☐ Direct Bill Client | ☐ Direct Bill Client | ☐ Direct Bill Client | ☐ Direct Bill Client | ☐ Direct Bill Client | ☐ Direct Bill Client |
| ☒ Client Credit Card | ☐ Client Credit Card | ☒ Client Credit Card | ☐ Client Credit Card | ☒ Client Credit Card | ☒ Client Credit Card |
| ☐ Guest Credit Card | ☐ Guest Credit Card | ☐ Guest Credit Card | ☐ Guest Credit Card | ☐ Guest Credit Card | ☐ Guest Credit Card |

| | |
|---|---|
| Client Name: Nationwide Insurance | Client Phone Number: 614-921-9878 |
| Client Address: One Nationwide Plaza | Columbus, OH 43215 |
| Attn to: Ken Enscoe | Client E-Mail Address: |
| Cardholder Name: Ken Enscoe | Nationwide Corp Purchasing Card |
| AMEX | |
| Type of Card     Credit Card Number | Exp. Date     Beacon Score (for office use only) |
| Cardholder's Billing Address: One Nationwide Plaza | |
| (This must be completed in order to verify credit card) Columbus, OH 43215 | Social Security Number: |
| Guest's E-Mail Address: | Guest's Fax #: 614-527-7036 |
| Guest's Home Phone Number: 614-921-9878 | Day Phone During Stay: |
| Guest's Home Address: (if different than billing address) | Send Credit Card Receipts to: ☐ Apt Address ☐ Billing Address ☐ Home Address ☐ Client Address |

I authorize BridgeStreet Corporate Housing Worldwide, Inc. ("BridgeStreet") to use this card for charges incurred by me or by any other occupant or invitee for any unpaid rent, phone or other incidental charges, missing or damages items or damage to the unit. I agree to the use of this card without my signature for such charges and that a signed facsimile of this Agreement shall suffice as an original. I also agree to allow BridgeStreet to verify my credit history from time to time.

Guest/Client Representative agrees to BridgeStreet's standard terms and conditions, which are attached hereto.

_____ 6/8/06       _____ 6/8/06
Guest/Cardholder Signature / Date       Client Representative Signature / Date

BF-2105B                    Rev. 6/23/03

EXHIBIT 1

Case 2:09-cv-00957-ALM-TPK   Document 3   Filed 10/26/09   Page 16 of 24

BRIDGESTREET
CORPORATE HOUSING WORLDWIDE

**Terms and Conditions & Reservation Confirmation**

Express Guest and BridgeStreet Corporate Housing Worldwide ("BridgeStreet")

1. Guest agrees that he/she (and any occupant or invitee) will abide by these Terms and Conditions and all rules and regulations of the Property. BridgeStreet and/or the building management reserve the right to remove any guest due to misconduct or violation of these Terms and Conditions or such rules and regulations.

2. BridgeStreet reserves the right to inspect, repair, remodel and maintain all apartment units, with advance notice given whenever possible.

3. Pets are permitted in specific apartments only if BridgeStreet gives Guest prior written approval of the specific pet (any additional or different pets will require separate written approval), and Guest complies with the following terms: (a) Guest must abide by all property restrictions and rules regarding pets at all times; (b) Guest must pay to BridgeStreet a non-refundable pet sanitation fee of $NA prior to move-in; (c) Guest is responsible for any damages to the apartment and common areas of the Property; (d) Guest must manage their pets, including immediately cleaning up after them in the common area and common areas of the Property; (e) Pets are not permitted in the garage or parking area; (f) excessive noise will not be allowed; and (g) Guests must confine pets during periods when BridgeStreet employees are scheduled to visit. Guests may be asked to remove the pet from the Property if there are any violations of these rules. BridgeStreet may terminate the reservation with respect to any Guest that refuses to comply with such request.

4. Guest will be liable for payment for loss of keys, gate passes, garage door opener (charges incurred for items if not returned within 5 business days after departure date), or for any damages to the apartment and its furnishings or fixtures or the common areas of the Property due to negligence, neglect or abuse of Guest, any occupant or invitee (including any extra cleaning or repairs required, in BridgeStreet's discretion).

5. The Guest agrees to take good care of the apartment and not to perform any hazardous, offensive or unlawful activity in the apartment or the common areas of the Property. The Guest agrees to obtain and/or maintain its own insurance and/or be responsible for the personal property of Guest, any occupant or invitee. Guest agrees and acknowledges that BridgeStreet will not be responsible for the safe-keeping of equipment, supplies, valuable material or other valuable items left in apartments or common areas of the Property. Guest may not rely on any contrary verbal or written assurances provided by BridgeStreet staff in this respect. State/Provincial laws will govern BridgeStreet's liability for items stolen from apartments.

6. The Guest will defend, indemnify and hold BridgeStreet harmless for any claims, losses or expenses arising from Guest's, any occupant's or invitee's use of the apartment or the common areas of the Property.

7. Cancellations must be submitted in writing. Reservations may be canceled seven (7) or more days prior to the scheduled arrival date at no charge. Reservations canceled less than seven (7) days prior to the scheduled arrival date will incur the following charges: reservations of 1-7 nights in length will incur a charge of one night's rent; reservations of 8-29 nights in length will incur a charge of 3 nights rent; reservations of 30 nights or more will incur a charge of 5 night's rent.

8. Should BridgeStreet need to secure additional apartment and/or furnishing inventory in addition to its existing inventory to meet the needs of the Guest, reservations may not be canceled once BridgeStreet is financially committed to leases and/or services related to such accommodations.

9. The client and/or guest shall be financially responsible for the apartment for the duration of the dates identified as the Arrival Date and the Departure Date in this agreement as well as any extensions beyond the original Departure Date. In all circumstances the client and/or guest shall provide to BridgeStreet a minimum written notice to vacate of 30 days prior to departure date and will be financially responsible until that time. If the client and/or guest fail to give such written notice prior to the departure date the agreement will automatically be extended for an additional 30 days. Rate is subject to review after the initial term. _____ initials

10. Any extension of the departure date is subject to availability and approval by BridgeStreet Corporate Housing. Any UNAUTHORIZED occupancy beyond dates approved by BridgeStreet will be liable for a charge of twice (2X) the daily, weekly or monthly rates then in effect for such holdover period.

11. Rate charges and applicable taxes are due and payable in advance. A late charge of 2% will automatically be added to all invoices overdue by 30 days or more and on all outstanding balances. Guest agrees to pay BridgeStreet all fees and costs, including reasonable fees by attorneys or collection agencies, incurred in BridgeStreet's efforts to collect all amounts due.

12. Guest authorizes BridgeStreet to obtain a credit report from one or more consumer credit reporting agencies. BridgeStreet may request this report at any time and from time to time during the Guest's stay with BridgeStreet and the Guest's reservation may be subject to minimum credit scores. Guest understands that unless minimum credit scores are met this reservation may be canceled.

13. Guest may not assign, sublease, transfer the Reservation Confirmation, the apartment or any part thereof or permit the use of the apartment by anyone other than the Guest and permitted occupants.

14. Guest represents, warrants and covenants to BridgeStreet that Guest's use and occupancy of the apartment is of a transient nature and the apartment is not intended to be a permanent residence of Guest. In no event shall Guest's occupancy and use of the apartment be construed to create any landlord/tenant relationship between BridgeStreet and Guest. This Agreement is not a lease and is not intended to convey to Guest any real property interest or estate in or to the apartment or any other portion of the Property.

Res #:59369          Guest Signature / Date          _____ 6/8/06
                                                      Client Representative Signature / Date

BF-2105B

Rev. 6/23/03

Page 1 of 1

**Melissa Atkins**

| | |
|---|---|
| **From:** | Melissa Atkins [mdowler@helmsbriscoe.com] |
| **nt:** | Thursday, September 22, 2005 3:22 PM |
| **To:** | 'Pauley, Mindy' |
| **Subject:** | Condos in Houston? |
| **Importance:** | High |

Mindy,

Do you have condos in Houston??? We are going to need them for Nationwide, looking for probably 50-100!  Let me know.

Melissa Dowler-Atkins, CMP
HelmsBriscoe
3445 Stonevista Lane
Columbus, OH 43221
614-921-9878
614-527-7036 fax
mdowler@helmsbriscoe.com
www.helmsbriscoe.com

EXHIBIT
2

-----Original Message-----
From: Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
Sent: Thursday, September 22, 2005 4:47 PM
To: Melissa Atkins
Subject: FW: Houston, Tx/ Hurricane Rita Apartments


We will need a word asap.

-----Original Message-----
From:  Zigo, Kristen
Sent:  Thu Sep 22 16:26:32 2005
To:    Pauley, Mindy
Subject:    Houston, Tx/ Hurricane Rita  Apartments

HI Mindy - here are some options!  15-20 units so far - available next week!

One bedrooms: 111.00 / Night
Two bedrooms: 129.00 / Night


Camden Oak Crest
Allen House
3525 Sage
Broadstone Westway Park

Kristen Zigo
Global Account Manager
BridgeStreet Worldwide - Arlington | Virginia
Corporate Housing Made Easy
p: 703.387.3628
f: 703.387.3601
kristen.zigo@bridgestreet.com
www.bridgestreet.com
BridgeStreet is a division of Interstate Hotels & Resorts - www.ihrco.com

FW: Houston, Tx/ Hurricane Rita Apartments                                    Page 1 of 1

**Melissa Atkins**

From:     Melissa Atkins [mdowler@helmsbriscoe.com]
Sent:     Thursday, September 22, 2005 6:24 PM
To:       'Pauley, Mindy'
Subject: RE: Houston, Tx/ Hurricane Rita Apartments

We'll take them ~ can you tell me how many at each location and does the rate include cleaning, utilitites and high speed?  Is it commissionable to me?

Thanks and send me the contracts or whatever you need.

*Melissa Dowler-Atkins, CMP*
*HelmsBriscoe*
*3445 Stonevista Lane*
*Columbus, OH 43221*
*614-921-9878*
*614-527-7036 fax*
*mdowler@helmsbriscoe.com*
*www.helmsbriscoe.com*

-----Original Message-----
**From:** Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
**Sent:** Thursday, September 22, 2005 4:47 PM
**To:** Melissa Atkins
**Subject:** FW: Houston, Tx/ Hurricane Rita Apartments

We will need a word asap.

-----Original Message-----
From:  Zigo, Kristen
Sent:  Thu Sep 22 16:26:32 2005
To:    Pauley, Mindy
Subject:     Houston, Tx/ Hurricane Rita Apartments

HI Mindy ~ here are some options!  15-20 units so far - available next week!

One bedrooms: 111.00 / Night
Two bedrooms: 129.00 / Night

Camden Oak Crest
Allen House
3525 Sage
Broadstone Westway Park

Kristen Zigo
Global Account Manager
BridgeStreet Worldwide - Arlington  Virginia
Corporate Housing Made Easy
p: 703.387.3628
f:  703.387.3601
kristen.zigo@bridgestreet.com
www.bridgestreet.com
BridgeStreet is a division of Interstate Hotels & Resorts - www.ihrco.com

RE: Houston, TX/ Hurricane Rita Apartments

**Melissa Atkins**

From:      Melissa Atkins [mdowler@helmsbriscoe.com]
nt:        Friday, September 23, 2005 10:30 AM
           'Pauley, Mindy'
Subject:   RE: Houston, Tx/ Hurricane Rita Apartments

Great, just send the contracts and I'll get them signed.

*Melissa Dowler-Atkins, CMP*
*HelmsBriscoe*
*3445 Stonevista Lane*
*Columbus, OH 43221*
*614-921-9878*
*614-527-7036 fax*
*mdowler@helmsbriscoe.com*
*www.helmsbriscoe.com*

> -----Original Message-----
> **From:** Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
> **Sent:** Friday, September 23, 2005 9:48 AM
> **To:** Melissa Atkins
> **Subject:** RE: Houston, Tx/ Hurricane Rita Apartments

They are commissionable

> -----Original Message-----
> **From:**   Melissa Atkins [mailto:mdowler@helmsbriscoe.com]
> **Sent:**   Thu Sep 22 18:26:08 2005
> **To:**     Pauley, Mindy
> **Subject:**    RE: Houston, Tx/ Hurricane Rita  Apartments

We'll take them ~ can you tell me how many at each location and does the rate include cleaning, utilitites and high speed?  Is it commissionable to me?


Thanks and send me the contracts or whatever you need.


Melissa Dowler-Atkins, CMP

HelmsBriscoe

3445 Stonevista Lane

Columbus, OH 43221

614-921-9878

614-527-7036 fax

mdowler@helmsbriscoe.com

www.helmsbriscoe.com

1/30/2008

RE. Houston, Tx/ Hurricane Rita Apartments

**Melissa Atkins**

From:    Melissa Atkins [mdowler@helmsbriscoe.com]
Sent:    Friday, September 23, 2005 2:32 PM
To:      'Pauley, Mindy'
**Subject:** RE: Houston, Tx/ Hurricane Rita Apartments

Nationwide is questioning the costs, they think the price is high for the area. Is there anything you can do. They felt that the area is more like $100 per night?

I'm not familiar with the area, so I can't justify either way. Let me know your thoughts.

Melissa Dowler-Atkins, CMP
HelmsBriscoe
3445 Stonevista Lane
Columbus, OH 43221
614-921-9878
614-527-7036 fax
mdowler@helmsbriscoe.com
www.helmsbriscoe.com

-----Original Message-----
**From:** Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
**Sent:** Friday, September 23, 2005 2:12 PM
**To:** Melissa Atkins
**Subject:** RE: Houston, Tx/ Hurricane Rita Apartments

High speed and housekeeping are 6.00 per day.

-----Original Message-----
From:  Melissa Atkins [mailto:mdowler@helmsbriscoe.com]
Sent:  Fri Sep 23 10:31:41 2005
To:    Pauley, Mindy
Subject:    RE: Houston, Tx/ Hurricane Rita  Apartments

Great, just send the contracts and I'll get them signed.

Melissa Dowler-Atkins, CMP

HelmsBriscoe

3445 Stonevista Lane

Columbus, OH 43221

614-921-9878

614-527-7036 fax

mdowler@helmsbriscoe.com

www.helmsbriscoe.com

-----Original Message-----
From: Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]

/30/2008

RE: Houston, Tx/ Hurricane Rita Apartments

Page 1 of

**Melissa Atkins**

From:    Melissa Atkins [mdowler@helmsbriscoe.com]
Sent:    Monday, September 26, 2005 6:25 PM
To:      'Pauley, Mindy'
Subject: RE: Houston, Tx/ Hurricane Rita Apartments

We wont' need condos in Houston ~ thanks,

*Melissa Dowler-Atkins, CMP*
*HelmsBriscoe*
*3445 Stonevista Lane*
*Columbus, OH 43221*
*614-921-9878*
*614-527-7036 fax*
*mdowler@helmsbriscoe.com*
*www.helmsbriscoe.com*

-----Original Message-----
**From:** Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
**Sent:** Friday, September 23, 2005 3:14 PM
**To:** Melissa Atkins
**Subject:** RE: Houston, Tx/ Hurricane Rita Apartments

Melissa. We just put a group at another property that was a way outside houston and 1 bedrooms were 99 per night on a 9 month lease are they willing to sign a 9 month lease?

-----Original Message-----
From:   Melissa Atkins [mailto:mdowler@helmsbriscoe.com]
Sent:   Fri Sep 23 14:33:34 2005
To:     Pauley, Mindy
Subject:    RE: Houston, Tx/ Hurricane Rita  Apartments

Nationwide is questioning the costs, they think the price is high for the area. Is there anything you can do. They felt that the area is more like $100 per night?

I'm not familiar with the area, so I can't justify either way.  Let me know your thoughts.

Melissa Dowler-Atkins, CMP

HelmsBriscoe

3445 Stonevista Lane

Columbus, OH 43221

614-921-9878

614-527-7036 fax

mdowler@helmsbriscoe.com

www.helmsbriscoe.com

RE: Houston, Tx/ Hurricane Rita Apartments

**Melissa Atkins**

| | |
|---|---|
| **From:** | Melissa Atkins [mdowler@helmsbriscoe.com] |
| **Sent:** | Monday, September 26, 2005 7:15 PM |
| **To:** | 'Pauley, Mindy' |
| **Subject:** | RE: Houston, Tx/ Hurricane Rita Apartments |

We don't need them and I never rec'd a contract.... The rate was too high and you proposed others in a further out area, but regardless, they don't want them. Thanks,

*Melissa Dowler-Atkins, CMP*
*HelmsBriscoe*
*3445 Stonevista Lane*
*Columbus, OH 43221*
*614-921-9878*
*614-527-7036 fax*
*mdowler@helmsbriscoe.com*
*www.helmsbriscoe.com*

    -----Original Message-----
    **From:** Pauley, Mindy [mailto:Mindy.Pauley@bridgestreet.com]
    **Sent:** Monday, September 26, 2005 7:06 PM
    **To:** Melissa Atkins
    **Subject:** RE: Houston, Tx/ Hurricane Rita Apartments

    Melissa I will need to confirm that we did not already take these.

    -----Original Message-----
    From: Melissa Atkins [mailto:mdowler@helmsbriscoe.com]
    Sent: Thu Sep 22 18:26:08 2005
    To: Pauley, Mindy
    Subject: RE: Houston, Tx/ Hurricane Rita Apartments

    We'll take them ~ can you tell me how many at each location and does the rate include cleaning, utilitites and high speed? Is it commissionable to me?

    Thanks and send me the contracts or whatever you need.


    Melissa Dowler-Atkins, CMP

    HelmsBriscoe

    3445 Stonevista Lane

    Columbus, OH 43221

    614-921-9878

    614-527-7036 fax

    mdowler@helmsbriscoe.com

    www.helmsbriscoe.com

1/30/2008

BridgeStreet Corporate Housing
Nationwide Insurance

| Nationwide Houston Apartments | | | | |
|---|---|---|---|---|
| **Unit** | **Daily Rate** | **Total for Unit** | | |
| 3601-399 Allen Parkway | $117.00 | $10,413.00 | | |
| 3601-858 Allen Parkway | $117.00 | $6,903.00 | | * Apartment Re-leased |
| 10800-8305 Clay Road | $135.00 | $12,015.00 | | |
| 10800-9302 Clay Road | $135.00 | $12,015.00 | | |
| 10800-9307 Clay Road | $135.00 | $7,290.00 | | * Apartment Re-leased |
| 10800-9308 Clay Road | $135.00 | $7,290.00 | | * Apartment Re-leased |
| 10800-10301 Clay Road | $135.00 | $12,015.00 | | |
| 10800-10308 Clay Road | $135.00 | $12,015.00 | | |
| 12025-8307 Richmond Ave | $117.00 | $10,413.00 | | |
| 12025-13308 Richmond Ave | $135.00 | $12,015.00 | | |
| 3525-214 Sage | $117.00 | $10,413.00 | | |
| 3525-309 Sage | $135.00 | $12,015.00 | | |
| 3525-409 Sage | $135.00 | $12,015.00 | | |
| 3525-609 Sage | $135.00 | $12,015.00 | | |
| 3525-709 Sage | $135.00 | $12,015.00 | | |
| 3525-901 Sage | $117.00 | $10,413.00 | | |
| 3525-1609 Sage | $135.00 | $12,015.00 | | |
| 3525-1618 Sage | $117.00 | $10,413.00 | | |
| 2049-H124 Westcreek Lane | $117.00 | $10,413.00 | | |
| **Total** | | **$204,111.00** | | |

EXHIBIT

3

1

12:43 PM  1/30/2008