IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INS. CO., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:09-cv-957 |
| | : | |
| v. | : | JUDGE MARBLEY |
| | : | |
| BRIDGESTREET CORPORATE HOUSING LLC, | : | Magistrate Judge Kemp |
| | : | |
| Defendant/Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HELMSBRISCOE PERFORMANCE GROUP, INC., | : | |
| | : | |
| Third Party Defendant | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Third Party Defendant HelsmBriscoe Performance Group, Inc.'s ("HelmsBriscoe") Motion to Dismiss the Amended Third Party Complaint (Doc. 35).  For the reasons set forth below, HelmsBriscoe's Motion is **DENIED**.

**II. BACKGROUND**

Nationwide Mutual Insurance Company ("Nationwide") provides various insurance products, including products protecting against property damage resulting from natural disasters.  As part of those services, Nationwide dispatches a disaster response team to affected areas following hurricanes and other natural disasters.  The disaster response team, known as the Nationwide Catastrophe Team ("NATCAT"), helps with cleanup and rebuilding, and it provides necessary services to Nationwide customers affected by the natural disasters.

BridgeStreet Corporate Housing LLC ("BridgeStreet") provides reservations for extended stay apartments and condominiums to corporate clients.  In December 2004, NATCAT began using BridgeStreet's services to lease temporary housing for NATCAT team members dispatched to natural disaster areas.  NATCAT worked with BridgeStreet on multiple occasions between 2004 and 2007.

HelmsBriscoe is a third party reservation vendor that Nationwide contracted to secure NATCAT's temporary housing needs.  As housing needs arose, NATCAT contacted HelmsBriscoe to make necessary reservations on its behalf, and HelmsBriscoe then contacted BridgeStreet to obtain information regarding pricing and availability in the relevant locations.  BridgeStreet provided the information to HelmsBriscoe, and HelmsBriscoe passed the information on to Nationwide for a final decision.  If Nationwide approved the transaction, HelmsBriscoe contacted BridgeStreet to request a written contract and any necessary leases.  BridgeStreet would then send its standard contract and any necessary leases to HelmsBriscoe to be signed by a Nationwide representative.

In anticipation of the arrival of Hurricane Rita in September 2005, Nationwide asked HelmsBriscoe to locate several hundred apartments and condominiums throughout Texas.  On September 22, 2005, HelmsBriscoe requested that BridgeStreet locate fifty to one hundred condominiums in Houston, Texas.  That same day, BridgeStreet responded with a quote for fifteen to twenty units available at $111 per night for a one bedroom or $129 per night for a two bedroom.  HelmsBriscoe forwarded the quote to Nationwide for approval, noting that in order to obtain that price, Nationwide would have to commit to six month lease on the condos.  Later on

the same day, HelmsBriscoe responded to BridgeStreet, asking several follow-up questions and requesting that BridgeStreet send the relevant contracts to be signed by Nationwide.

On September 23, 2005, BridgeStreet responded to HelmsBriscoe's questions. BridgeStreet did not, however, send any contracts to be signed by Nationwide. On the same day, HelmsBriscoe informed BridgeStreet that Nationwide thought the quoted prices were too high and asked if any lower priced rooms were available. BridgeStreet responded with a quote for one bedroom apartments outside Houston for $99 per night with a nine-month lease.

On September 26, 2005, when it became clear that Hurricane Rita would not be as destructive as anticipated, HelmsBriscoe informed BridgeStreet's sales representative, Mindy Pauley, that Nationwide would not need any condos in Houston.

BrideStreet did not inform Nationwide that BridgeStreet had reserved any condos on Nationwide's behalf. Four months later, however, Nationwide received a bill showing that its corporate credit card had been charged $204,111.00 for condos in Houston reserved from September 28, 2005 to December 31, 2005. The invoice indicated that BridgeStreet had leased nineteen units in Houston on Nationwide's behalf at daily rates of $117 and $135 per night.

On September 18, 2009, Nationwide filed a Complaint in the Franklin County Court of Common Pleas against BridgeStree Corporate Housing, LLC; BridgeStreet Midwest, LLC; and BridgeStreet Ohio, LLC, alleging breach of contract, conversion, breach of fiduciary duty, and negligence. On October 26, 2009, Bridgestreet removed the case to this Court. On November 12, 2009, Bridgestreet filed a Third Party Complaint, which it amended on March 22, 2010. The Amended Third Party Complaint alleged negligent misrepresentation, breach of an oral commission agreement, unjust enrichment, and implied indemnity. HelmsBriscoe filed a Motion

to Dismiss the Amended Third Party Complaint, and Bridgestreet subsequently voluntarily dismissed the second and third claims, leaving only the claims for negligent misrepresentation and implied indemnity.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, --- U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  The complaint must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  A complaint that suggests "the mere

4

possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

## IV. LAW & ANALYSIS

Federal Rule of Civil Procedure 14 allows for the filing of third-party complaints. The Rule is designed "to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Such "[t]hird-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim." *Id*. As such, a third-party claim "that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Id*. Third-party pleading is proper where a defendant attempts "to transfer the liability asserted against him by the original plaintiff to the third-party defendant." *Id*.

Bridgestreet has two claims remaining against HelmsBriscoe, both of which HelmsBriscoe seeks to have dismissed based upon the rules for third-party pleading. The claims remaining claims are: (1) negligent misrepresentation; and (2) implied indemnity.[1] The Court will address each in turn.

---

[1] In its Reply Brief, HelmsBriscoe contends that BridgeStreet's voluntary dismissal of Counts II and III resulted in dismissal of the entire action under Rule 41. The Court has already rejected that argument when granting BridgeStreet's Motion for Leave to File Amended Third-Party Complaint and denying HelmsBriscoe's Motion to Strike (Doc. 44). As a result, the Court will not address that argument here, but concludes, based upon the reasoning supplied in that Order, that Counts I and IV of the Third Party Amended Complaint remain.

5

## A. NEGLIGENT MISREPRESENTATION CLAIM

Bridgestreet's first claim for relief is one for negligent misrepresentation. Bridgestreet alleges that a HelmsBriscoe employee made negligent misrepresentations when she informed a Bridgestreet employee that Nationwide wanted to rent the original fifteen to twenty condos Bridgestreet found in Houston. Bridgestreet also alleges that it justifiably relied upon the HelmsBriscoe employee's representations when it rented the condos on behalf of Nationwide, and that to the extent Bridgestreet is liable to Nationwide, those damages were proximately caused by HelmsBriscoe's negligent misrepresentations. HelmsBriscoe contends that this claim should be dismissed because it is based upon an independent claim, and therefore is inappropriate for a third-party complaint.

BridgeStreet seeks recovery from HelmsBriscoe only "to the extent BridgeStreet is found liable to Nationwide from damages arising from the Houston, Texas transaction." (Am. Third Party Compl. ¶ 23.) The Complaint also explicitly states that BridgeStreet is seeking indemnity from HelmsBriscoe on the negligent misrepresentation claim. (*Id*.) HelmsBriscoe's contention that the negligent misrepresentation claim is an independent claim is simply wrong. BridgeStreet is seeking indemnity from HelmsBriscoe for HelmsBriscoe's alleged negligent misrepresentations, should BridgeStreet be found liable to Nationwide on the underlying claims contained in Nationwide's original complaint. This type of attempt by a third-party plaintiff "to transfer the liability asserted against him by the original plaintiff to the third-party defendant," *Am. Zurich Ins. Co.*, 512 F.3d at 805, is precisely the action contemplated by Rule 14 and its third-party pleading parameters. Accordingly, Nationwide's negligent misrepresentation claim

is appropriate for a third-party complaint, and BridgeStreet's Motion to Dismiss that claim is denied.

### B. IMPLIED INDEMNITY CLAIM

In BridgeStreet's final claim for relief, it alleges that it is entitled to implied indemnity from HelmsBriscoe for any damages it may owe Nationwide. HelmsBriscoe contends that this is an inappropriate third-party claim because Nationwide sued BridgeStreet for breach of contract, and HelmsBriscoe is therefore not a joint tortfeasor.

As a threshold matter, the Court notes that HelmsBriscoe's characterization of Nationwide's claims against BridgeStreet is factually inaccurate. While Count I of Nationwide's original Complaint did assert a breach of contract claim, Counts II through IV alleged conversion, breach of fiduciary duty, and negligence. HelmsBriscoe's reliance on the absence of a tort claim is therefore misplaced.[2]

HelmsBriscoe also contends that Ohio law does not permit claims for contribution among joint tortfeasors for claims involving breach of fiduciary duty. HelmsBriscoe relies on Ohio

---

[2]Even if Nationwide had asserted only a breach of contract claim against BridgeStreet, indemnity could still be available:

> A right to indemnification exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other. The right of implied indemnity in contractual cases is based upon a breach of contract by the person against whom the indemnity is sought while in the area of noncontractual indemnity the right rests upon the fault of another which has been imputed or constructively fastened upon him who seeks indemnity.

*Schill v. Wood*, 1977 WL 201323 (Ohio App. 1977). Because non-contractual claims exist in this case, the Court need not decide whether indemnity is available for Nationwide's breach of contract claim.

Revised Code Section 2307.31.  That statute, however, has been repealed.  Ohio Revised Code Section 2307.25 now deals with contribution claims.  This is not, however, a contribution claim.  This is an implied indemnity claim.  By its own terms, the Revised Code explicitly states that the existence or lack thereof of a contribution claim does not affect any indemnity rights a party may have.  Ohio Rev. Code § 2307.25(D) ("This section does not impair any right of indemnity under existing law.  If one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of the indemnity obligation.").[3]

BridgeStreet seeks relief from HelmsBriscoe only "to the extent BridgeStreet is found liable to Nationwide for securing the Houston, Texas, apartments without Nationwide's authority."  (Third Party Am. Compl. ¶ 6.)  This is not a third-party claim "that merely arises out of the same facts" as the original claim, *Am. Zurich Ins. Co.*, 512 F.3d at 805; rather, BridgeStreet contends that if it is liable to Nationwide, HelmsBriscoe should bear the burden of that liability because of an alleged negligent misrepresentation.  This is the quintessential third-party claim contemplated by Rule 14(a), and BridgeStreet's Motion to Dismiss is therefore denied.

---

[3] Even if BridgeStreet were prohibited from recovering from HelmsBriscoe as a result of Nationwide's breach of fiduciary duty claim, Nationwide's negligence claim against BridgeStreet remains.

## V. CONCLUSION

For the foregoing reasons, HelmsBriscoe's Motion to Dismiss the Amended Third Party Complaint is **DENIED**.

**IT IS SO ORDERED.**

                                                         s/Algenon L. Marbley
                                               **ALGENON L. MARBLEY**
                                               **UNITED STATES DISTRICT JUDGE**

**DATED: October 5, 2010**